IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

NOV 23 2020

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| DESTINY DELONEY, <br> 4211 Duneberry Trail <br> Humble, Texas 77346 <br><br> PLAINTIFF <br><br> v. <br><br> AMAZON.COM SERVICES, LLC <br> 410 Terry Avenue North <br> Seattle, Washington 98109 <br><br> Serve: <br> Corporation Service Company <br> DBA CSC - LAWYERS INCO <br> 211 E 7TH STREET, SUITE 620 <br> AUSTIN, TX 78701 | § § § § § § § § § § § § § § § § § § § | C.A. No 20CV3993 <br><br> (JURY TRIAL DEMANDED) |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, DESTINY DELONEY, filing her Original Complaint complaining of Defendant, AMAZON, and in support thereof would show as follows:

## I.
## JURISDICTION, PARTIES, AND VENUE

1.1 This Court has jurisdiction over these federal question causes of action alleged by Plaintiff pursuant to: (i) Title VII of the Civil Rights Act of 1964, as amended and (ii) The ADA Amendments Act of 2008.

1.2 DESTINY DELONEY resides in Humble, Texas. Plaintiff DELONEY is protected by (i) Title VII of the Civil Rights Act of 1964, as amended and ii) The ADA Amendments Act of

2008. Plaintiff DELONEY was at all relevant times an employee within the meaning of the aforementioned applicable statutes.

1.3 Defendant operates in Brookshire, TX . Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes.

1.4 Defendant employed more than fifteen (15) regular employees during the applicable time period.

1.5 The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

## **VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

1.6 Whenever in this complaint it is alleged that Defendants did any act or thing, it is meant that Defendant's owners, supervisors, agents, servants, employees, or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendant, or was done in the normal and routine course and scope of employment of Defendant's owners, supervisors, agents, servants, employees, or representatives.

1.7 The acts of management were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## FACTUAL BACKGROUND

2.1　In or about September of 2018, DESTINY DELONEY began working for Amazon as a Warehouse Associate.

2.2 DESTINY DELONEY was often offended by music and language repeatedly played by Problem Solver Brittany (last name unknown) that ran contrary to her religious beliefs as a Christian.

2.3 DESTINY DELONEY made an initial outcry to Senior Manager Israel Flores. Mr. Flores promised to address her complaints with Brittany but the offensive music continued to be played in the workplace.

2.4 DESTINY DELONEY verbally complained to Human Resources about Problem Solver Brittany.

2.5 DESTINY DELONEY also complained to her immediate supervisor, Assistant Manager Matt (last name unknown), about the offensive music.

2.6 In response to her complaints above, DESTINY DELONEY was treated poorly by Problem Solver Brittany and Assistant Manager Matt in comparison to her peers.

2.7 Specifically, DESTINY DELONEY was given work assignments including excessive ones and was heavily supervised by Problem Solver Brittany. Brittany did not have managerial authority but was instead allowed to act as such by Assistant Manager Matt as to DESTINY DELONEY.

2.8 On or about January 20, 2019, DESTINY DELONEY emailed Human Resources her outcry involving the conduct of Assistant Manager Matt and Problem Solver Brittany.

2.9 DESTINY DELONEY also made an outcry to Senior Manager Alex (last name unknown) about the offensive music and the retaliatory conduct of Assistant Manager Matt and Problem Solver Brittany. Alex promised to review DESTINY DELONEY's letter, but he never got back with her.

2.10   On or about January 21, 2019, DESTINY DELONEY felt a sharp pain in her lower back while working.

2.11   When she returned to work the following day, the pain in DESTINY DELONEY's lower back had worsened. She then reported it to human resources and management. She then went to Defendant's onsite first aid center.

2.12   DESTINY DELONEY was told to complete Defendant's Associate First Report of Injury form ("FROI") concerning her workplace injury. While completing it, Onsite Medical Associate James Frey took her uncompleted statement and told her that she did not need to complete the form. He told her he needed to complete the remaining items.

2.13   DESTINY DELONEY learned later that her injury report was manipulated to include untrue statements including that she was injured at a time that she was a child and while away from work.

2.14   DESTINY DELONEY made another outcry to management alerting them that her FROI report had been falsified.

2.15   DESTINY DELONEY was made to continue to work with severe pain for several weeks.

2.16   DESTINY DELONEY was eventually approved for workers' compensation.

2.17   Defendant told DESTINY DELONEY that they could not accommodate her medical condition, so she was without pay from on or about February 9-14, 2019.

2.18   On or about February 15, 2019, DESTINY DELONEY was accommodated and returned to work.

2.19   On or about February 21, 2019, Defendant required DESTINY DELONEY to work outside of her medical restrictions. Sadly, DESTINY DELONEY injured herself once again.

2.20  Because of Defendant's actions and inactions, there were times when DESTINY DELONEY was not compensated either by Defendant, or pursuant to her workers' compensation benefits.

2.21  DESTINY DELONEY told Defendant that she was uncomfortable with her workers' compensation doctors. The medical professionals were aggressive, impatient, unorganized and even untruthful.

2.22  The angst with DESTINY DELONEY's medical condition was not limited to the medical professionals. Defendant's *managers* openly exhibited such as well.

2.23  DESTINY DELONEY was also harassed and demeaned.

2.24  DESTINY DELONEY was offered a job where she would stand inside of a cage and move items. In or about March 26, 2019, DESTINY DELONEY simply verbalized concern about performing said job given the pain she was in. In response, management ordered DESTINY DELONEY to clock out and go home without further dialogue.

2.25  DESTINY DELONEY was then walked to human resources. Human Resources agreed that DESTINY DELONEY must leave Amazon's premises. DESTINY DELONEY was even told that she was a liability.

2.26  DESTINY DELONEY was actually penalized for leaving the premises when she was ordered to leave by managers and human resources.

2.27  It was clear to DESTINY DELONEY that she was viewed as a nuisance because of her complaints regarding religious discrimination and her medical condition and all that came with it.

2.28  On or about August 23, 2019, DESTINY DELONEY was suspended.

2.29　On or about January 3, 2020, boxes fell on DESTINY DELONEY's head at work. She reported the same to managers. Once again, DESTINY DELONEY was mistreated because of her injury. In fact, she was made to stay in a room against her will for a significant period of time. DESTINY DELONEY feared for her safety.

2.30　On or about January 13, 2020, DESTINY DELONEY reported to work. She was instructed to operate a pit truck. Before an employee can operate the pit truck, she had to sign off saying that she was physically fit to operate such. A training ambassador completed the form for DESTINY DELONEY. He ordered her to perform the task even though she told him she was experiencing back and neck pain.

2.31　DESTINY DELONEY reluctantly performed the task to save her job. The pain worsened. She sought medical treatment via Defendant's onsite first aid center.

2.32　Defendant's onsite first aid center representative told DESTINY DELONEY that he could not treat her further unless she clocked out. DESTINY DELONEY pleaded for medical assistance and explained that her break was not for some time.

2.33　DESTINY DELONEY reported the aforementioned to Human Resources Jennifer Freeman. Defendant's onsite first aid center representative interrupted the two women and said he would not give DESTINY DELONEY any medical treatment without a doctor's note.

2.34　DESTINY DELONEY went to her doctor and retrieved a note. It listed some medical restrictions.

2.35　Defendant refused to offer DESTINY DELONEY any accommodations unless she completed a form specifically for non-work related conditions.

2.35 DESTINY DELONEY verbalized concern with completing such a form given that it was work-related. She felt it was fraudulent and immoral to indicate otherwise, as such was contrary to her religious beliefs. In response, she was told that she could work without the restrictions or leave.

2.36 DESTINY DELONEY reported the aforementioned to management. She indicated that she did not feel safe working in this type of hostile environment without a solution.

2.37 DESTINY DELONEY's concerns went unanswered.

2.38 On or about January 23, 2020, DESTINY DELONEY was notified that she was terminated.

2.39 DESTINY DELONEY filed a Charge of Discrimination ("Charge") on or about June 18, 2020. In said Charge, and any amendments and/or attachments thereto, DESTINY DELONEY asserted that she was discriminated because of her disability and religion and was in retaliation for opposing such conduct.

2.40 After investigating Plaintiff's Charge, Plaintiff was issued a Right-To-Sue letter. Plaintiff DELONEY has exhausted her administrative remedies and files this suit within the statutory limitations period.

### III.
### CAUSES OF ACTION

A. **DISABILITY DISCRIMINATION PURSUANT TO the Americans with Disabilities Act ("ADA")**

3.1 Plaintiff is a qualified individual with a physical impairment in that she suffers from physical limitations related to medical conditions involving her back, neck and head that limits her in one or more major life activities.

3.2     Plaintiff has a history and record of having a disability. A record of a disability may be any form of record, such as a hospital record, medical record or any other document that indicates the plaintiff once had a substantially limiting impairment.

3.3     Plaintiff has also been regarded as having a disability.

3.4     Based on the aforementioned, Plaintiff is disabled within the meaning of ADA.

3.5     Defendant entertained misperceptions regarding Plaintiff that proved detrimental to her employment.

3.6     Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADA by intentionally interfering with Plaintiff's performance of her employment because of her actual medical condition, history and record of disability and the perception of same including refusing to reasonably accommodate her, refusing to engage in interactive dialogue concerning her limitations, over-supervising her, forcing her to work outside of her medical restrictions, becoming hostile towards her and her wellbeing, forcing her to take unpaid leave, suspension, and terminating Plaintiff, among other things.

3.7     This intentional interference consisted of discrimination of a continuous nature.

3.8     Defendant, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

3.9     The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

**B.    RETALIATION PURSUANT TO CHAPTER §451 OF TEXAS LABOR CODE**

3.10.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

3.11    Defendant discriminated against and discharged Plaintiff in retaliation for

Plaintiff's instituting a claim under the Texas Workers' Compensation Act and seeking benefits under the Act. Specifically, (1) Defendant failed to engage in an interactive exchange with Plaintiff about the status of her medical condition and employment, (2) Defendant exhibited a negative attitude toward Plaintiff's medical condition and her wellbeing, (3) Defendant failed to adhere to established company policies, (4) Defendant terminated Plaintiff, (5) Defendant forced her to work outside of her medical restrictions, and (6) Other harassing communications and conduct including being forced to take unpaid leave, suspension and ultimately discharged.

3.12 Such harassment and termination violated §451.001, *et seq.*, of the Texas Labor Code and was illegal. As a proximate result of this unlawful act, Plaintiff suffered damages.

C. **RELIGIOUS DISCRIMINATION PER TITLE VII**

3.13 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

3.14 Defendants, through their agents, supervisors, or employees engaged in unlawful religious discrimination.

3.15 The above-described harassment created an intimidating, oppressive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

3.16 Defendant at all times relevant hereto had actual and/or constructive knowledge of the conduct described in the paragraphs above in large part because of the open and obvious nature of the misconduct that permeated.

3.17 As a result of the hostile and offensive environment perpetrated by Defendant

through their agents, supervisors, or employees, and maintained by Defendant's failure to protect Plaintiff from such offenses and instead caused her discharge and severe emotional distress and physical injury.

3.18 Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions as described in the paragraphs above.

3.19 Defendant failed to comply with their statutory duty to promptly take all reasonable and necessary steps to eliminate harassment from the workplace and to prevent it from occurring in the future.

3.20 As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against Plaintiff through their agents, supervisors, or employees, Plaintiff has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and/or will incur medical expenses for treatment by psychotherapists and other health professionals, and for other incidental expenses; and she has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

3.21 As a further direct and proximate result of Defendant's violation of said statutes, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to

enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court to amend this Compliant in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorney's fees be awarded, where applicable.

D. **RETALIATION PURSUANT TO ADA & TITLE VII**

3.22. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

3.23 After complaining to management of religious-motivated offenses and disability-related maltreatment, Plaintiff was subsequently and repeatedly harangued, ignored, bullied and terminated in the ways described above and in her Charge of Discrimination.

3.24. As herein alleged, Defendant illegally retaliated against Plaintiff because she opposed discrimination and complained of same. Defendant had no legitimate business reasons for any of such acts. Each act of retaliation is in violation of each statute's anti-retaliation provisions.

3.25 As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against her, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

3.26 The above-described acts on Defendant's part were undertaken in violation of ADA & TITLE VII and proximately caused Plaintiff substantial injuries and damages.

## IV.
## JURY DEMAND

4.1 Plaintiff requests that this action be heard before a jury.

## V.
## DAMAGES

5.1 Defendant's conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Plaintiff DELONEY in her occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful disciplinary practices, policies, and procedures of the Defendant. Accordingly, Plaintiff DELONEY seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial including punitive damages.

5.2 Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff DELONEY to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

5.3 Additionally, Plaintiff DELONEY has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff DELONEY seeks all general, special, incidental, and consequential damages as shall be proven at trial.

5.4 Further, Plaintiff DELONEY seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to the

Defendant. Plaintiff DELONEY also seeks post-judgment interest at the maximum rate allowed by law in the event the Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching the Defendant.

## VI.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of religion and disability as outlined above as well as retaliation;

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest interest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

DESTINY DELONEY
4211 Duneberry Trail
Humble, Texas 77346
832-614-7363